Judge Owsley
delivered the Opinion of the Court.
To recover on a note given by Benjamin Rogers, in his life time, Farrar brought an action of debt against Elijah Rogers, Joseph Rogers, Wm. Rogers and B. F. Rogers, and declared against them as executors and devisees of said Benjamin Rogers, deceased.
Each of the defendants in the circuit court, filed separate pleas, but as the verdict and judgment were jn favor of all except Joseph Rogers, by whom this writ of error is prosecuted, we shall pay no attention to the pleadings of any but him.
Joseph Rogers filed two pleas, one of which deifies that he is executor of Benjamin Rogers, deceased, and the other denies that he has received any thing by devise, from the said Benjamin &c. Issues were joined to each of these pleas, and verdict and judgment recovered against Joseph Rogers, as devisee of the said Benjamin Rogers, deceased.
After the evidence was heard by the jury, the court instructed them, on the motion of Farrar, that if they believed the testimony, the law was for him, and that they must find against Joseph Rogers, as a devisee bv implication.
Under this instruction the jury found for Farrar, the debt claimed by him, and they also found that there had been devised and passed to Joseph Rogers, by the last will and testament of Benjamin Rogers, deceased, .the following slaves: Arther, of the value of $400; Charity, of the value of $350; Moss, of the value of $325; Davy, of the value of $350; Cassey, of the value of $125; Aggy, of the value of $125; Mepsey, of the value of $80. On this verdict the judgment now sought to be reversed was rendered against Joseph Rogers for the debt of Farrar,and cost, to be made out of the estate devised.
At common Jaw, devisees of land were not subject to the actions of creditors.
Statute ofW. & M. against fraudulent devises, gave the action against the heirs and devisees of lands jointly on all the specialties ■wherein the ancestor expressly bound his heirs.
Act of >9?, gave the action against the heirs and devisees of lands jointly with the executors in all cases, where the executors were bound—
*422 The verdict of the jury having found no estate devised to Joseph Rogers, by the will of Benjamin Rogers, except slaves, we' are presented with the question, whether or not an action at law is maintainable, against the devisees of such estate, by a creditor of the testator?
it will readily occur to every one, that it the action can be maintained, it must be owing to some statutary enactment, and not upon principles of the common law. There is no principle of the common law, which has been more uniformly recognized by elementary writers and jurists, than that which precludes a creditor of the testator from maintaining an action either against the devisee of lands, or the legatee of chattels.
This rule of the common law originated with the fight to dispose of property by will, and continued inflexible and unaltered, until a change was produced by the Parliament of England, by the statute of W. and M. c. 14, usually denominated the statute against fraudulent deyises. By that statute creditors by bond or other specialties, in which the testator bound himself and his heirs, were enabled, after the testator’s death, to maintain their action of debt against the heirs at law of such obligor, and the de-visee or devisees of the lands, tenements or heredi-taments jointly; but as respects all other creditors, the statute provided no redress, nor did it give any remedy against legatees of chattel interests, so that after the statute, the rule of the common law remained the same, except as to the rights of creditors by specialties, in which the testator had bound himself and heirs, to maintain actions against the devisee or devisees of land tenements &c.
Thus stood the law until after the separation of this State from the State of Virginia, and until a further change was produced by an act of the legislature of this State, which passed the 17th of December, 1792. The second section of that act provides: “The same action which will lie against executors or administrators, may be brought jointly against them and the heirs and devisees of the deceased person, or both, and shall not be delayed by *423 íhe non age of any of the parties.” Whatevef may, therefore, now be the nature of the creditor’s demand, provided it be such for which an action will lie against an executor or administrator, an action may undoubtedly, since the passage of that act, be maintained jointly against the executor or administrator and heirs, or the devisees of lands, tenements &o.
But—
This act of ’92, does not give an action against the legatees of chattel interests.
Executors dr administrators are subject to the actions of creditors to the amount of the chattels.
But the act of 1792 is not understood to change the rule of the common law, as respects legatees of chattel interests; and as to them the legal remedy of creditors must, we apprehend, be as it was at common law, against the executor or administrator only. The legal title of goods and chattels on the death of the owner, passes to, and becomes vested in, the executor or administrator of the testator or intestate.
The burthen of administering such estate devolves upon the executor or administrator; they are, to the extent of the estate which may come to their hands to be administered, liable to the creditors of the testator or intestate; they are bound to observe a particular order in the payment of the creditor’s demands, and though any part of the chattels be specifically bequeathed by the testator, the specific legatee can derive no legal title to the thing bequeathed, without first receiving the assent of the executor, and after his assent is given, the executor remains still liable to the action of the creditor. There was not, therefore, the same reason forgiving remedy by action against the legatee of a chattle, as existed for providing remedy against heirs and de-visees of real estate, in favor of persons having demands against the testator or intestate, for which no action could have been maintained by them before the passage of the act against the heirs and devisees. It was to enable creditors to reach the estate of the testator or intestate, in the hands of the heir or de-visee, but which could not have been previously reached by any action against them or any other person, that the remedy was provided by the act of 3792, and that object will be fully attained without construing the act so as to authorise an action against the legatee of a chattel interest.
Devisee is one to whom real estate is devised. Legatee one to whom chattels are bequeathed.
Since the act of1800, slaves devised, pass rs lands to the devisees, not through the executors, and the creditors may maintain their actions against them as against devisees of Sand.
It is against devisees and not against legatees that remedy is given by the acC Each of those terms have a technical signification; and should be taken in their technical sense. Devisee, in its technical sense, means one to whom lands or other real estate are devised; Legatee, a person to whom chattels are bequeathed.
Were it, therefore, conceded that at the death of the testator, Benjamin Rogers, his slaves, which were disposed of by his will passed to his executor and not as land directly to his devisees, we should have no hesitation in saying that the action cannot be maintained against the devisees. But according to the present state of the law of this country, we do not understand that slaves devised pass to the executor named in the will. At the passage of the act of 1792, slaves no doubt passed to the executor and were assets in his hands for the payment of the testator’s debts; but it is otherwise now and it was otherwise at the time of the testator, Benjamin’s, decease, and has been so ever since the passage of the act of November 26th, 1800. By that act it is expressly provided that, “slaves, so far as respects last wills arid testaments, shall hereafter, within this Commonwealth, be held and deemed as real estate, and shall pass by the last will and testament of persons possessed thereof, in the same manner and under the same regulations as landed property.” Now as lands devised pass directly to the devisee, and not to the executor, it is impossible for slaves to pass by last wills and testaments, in the same manner and under the same regulations as land, and yet go to the executor and riot pass directly to the devisee. Slaves must, therefore, since the act of 1800, be understood, as respects last wills and testaments, to be real estate, so as to pass to devisees in the same manner as land, and thereby subjecting the devisee to the same actions which may be maintained by the creditors of the testator against devisees of land.
The next question to be noticed involves the cor? rectness of the instruction which was given by the circuit court to the jury.
in an action against one ^omthe (ie° visc is contingent, the 1>|!ainti15 must s iew e con~ tingency had occurred,and the devise vested before the action was commenced.
^^, ia plaintifTin-troduced pa-ro1 evidence, to contingency liad happen-to maintain the action, he J;n' titled to the instructions of the court hypothecated pr0ved,abui not that the verdict ought .j. the jury be-hew the eH-*"ce’
Where due deviso to one tor life is on condition he elect to hold and he decline, and release to those in remainder, no action can be maintained against him on the contract of the testator under the statute.
*425 It is here proper to premise, that the will of Benjamin Rogers contains no express devise to Joseph Rogers, so as to authorize the court, as matter of legal construction to pronounce Joseph Rogers to be a devisee under the will. It is true that the will contains provisions which, upon the happening of certain events after the death of the testator, might be construed to be a devise of certain slaves to Joseph during his life time, but whether those events did or did not occur before the action was commenced by Farrar was to be ascertained by extraneous evidence, and not from the will of the testator.
With a view to establish those events, parol evidence was introduced by Farrar, and after his evidence was heard by the jury, it would no doubt have been competent for him to have asked of the court instructions to the jury upon any point of law pertinent to the matter in contest; but in doing so he should not have withdrawn from the jury the decision of the facts which the evidence was introduced to prove, as we understand was clone by the motion which was made and tlie decision thereon by the court. By the construction which the court gave, the jury were' told, that if they believed the evidence they must find against Joseph Rogers as devisee by implication. Now whether he was de- • v i. visee, even by implication, depends, as we have already remarked, upon certain facts which it was the object of Farrar to establish by the parol evidence; so that before the court could decide that he was devisee, it was necessary to decide upon the evidence in relation to those facts. It is no answer to this objection to the instruction given by the court, to say that it was hypothecated upon the jury’s belief of the testimony; for the evidence was produced by Farrar himself, and it is totally inadmissible for a party either to demur to his own evidence or call upon the court by motion in the nature of a demurrer to evidence to draw inferences from his own evidence as to contested facts, and to instruct the jury as to the law upon the facts inferred.
But were it competent for the court to have decided the facts, we should have no difficulty in say *426 ing that the evidence introduced,was totally insufficient to prove the facts necessary to establish Joseph Rogers to be a devisee. By no possible construction which can be put upon the will was be intended bv the testator to be a devisee, unless he should elect to take and hold the slaves during his natural life, and so far from his electing to do so, the evidence is conclusive to show that, recently after the death of the testator, he, by writing under his hand and seal, renounced all claim to the slaves and surrendered them to the devisees to whom the testator bequeathed them.
Wickliffe, for plaintiff; Chinn and Payne, for defendant.
The court, therefore, erred in its instruction to the jury.
The judgment must be reversed with cost, the cause remanded to the circuit court, and further proceedings there had, not inconsistent with this opinion.